STATE of Missouri,
Plaintiff-Respondent,

v.

Lynn Clark DRANE,
Defendant-Appellant.

No. KCD 29691.

Missouri Court of Appeals,
Western District.

April 30, 1979.

David H. Bony, Kansas City, for defendant-appellant.

Mary C. Asel, Asst. Pros. Atty., Columbia, for plaintiff-respondent.

Before SHANGLER, P. J., and WASSERSTROM and CLARK, JJ.

WASSERSTROM, Judge.

Defendant was tried and convicted by a jury of driving while intoxicated, second offense, and the jury fixed his punishment at 30 days in the county jail and a $1,000 fine. Defendant's sole point on this appeal is that he was deprived of the right of counsel. We reverse and remand for a new trial.

This case first came up for trial on January 27, 1977. At that time Mr. William A. Atkinson appeared for defendant, stated that he was substituting for Mr. Welliver, and requested a continuance and resetting of the trial date. The court in response to

that request reset the case for jury trial on March 3, 1977.

The next chronological development shown by the transcript is a docket entry dated February 7, 1977, which reads in full as follows: "Prosecuting Attorney appears by Assistant Prosecuting Attorney. Defendant appears by counsel. Counsel motion to withdraw being presented. Same sustained. Warren Welliver given leave to withdraw as attorney for defendant. F.C." [1]

On March 3, 1977, the case came on regularly for trial before Judge John M. Cave and defendant appeared personally, without counsel. A jury was selected in accordance with the usual voir dire procedure. Though given the right by the trial court to ask questions of the venire and to make objections, defendant did not participate in this process in any meaningful way. An opening statement then followed the prosecuting attorney.

At that point, the trial judge inquired whether defendant desired to make an opening statement. Before answering to that question, defendant put a question of his own to the court concerning his right to have witnesses. After some discussion about subpoenas, the following colloquy occurred:

"MR. DRANE: Can I have an attorney here this afternoon?

THE COURT: You mean to sit with you?

MR. DRANE: Yeah.

THE COURT: If you think you could get one, I'll recess it at this time so that he could be here with you as much as possible.

MR. DRANE: Could it be recessed till one o'clock?

THE COURT: How long do you think your evidence will take, Mr. Strauss?

MR. STRAUSS: Approximately thirty minutes.

THE COURT: Well, under the circumstances, since . . . since the defend-

ant is representing himself at the moment and is unfamiliar with legal process, I would recess it until one o'clock at this time.

MR. STRAUSS: Your honor, this case has been set for two months. He'd been through this legal process before and it took three years to get him to trial. And it appears he's doing the same thing again.

THE COURT: Well, the case, the trial has commenced at this time . . .

MR. STRAUSS: But, Judge . . .

THE COURT: . . . I think . . I think an hour and a half recess would not be too much. We'd have to take a break for lunch anyway.

MR. DRANE: I can . . . I can . . . I hate to ask you for it . . I thought I was going to have an attorney here this morning, but I would . . that's the reason I wanted it to go on through because I don't want it to be drug three years. I want to go on.

THE COURT: Would, uh, if we would recess for a few minutes, could you call your attorney and see if he could make it here in the next fifteen or twenty minutes?

MR. DRANE: He's in . . . He is busy at the present time. He'll be . . they'll be busy until noon, will be till twelve o'clock anyway.

THE COURT: What?

MR. STRAUSS: Who's his attorney?

MR. DRANE: That's, uh, I'll have to get one.

MR. STRAUSS: Your honor, he doesn't even have an attorney at the present time.

THE COURT: Will . . .

MR. DRANE: I have one in mind.

MR. STRAUSS: Even now, your honor, he's saying he has one in mind, and he doesn't have an attorney. He's making a mockery of this whole proceeding.

THE COURT: Would you be willing to proceed, Mr. Drane, this morning if you

---

1. It can be inferred that the initials are those of Judge Frank Conley, one of the judges in the 13th judicial circuit.

can get your attorney here this afternoon at one o'clock?

MR. DRANE: Yes, I would.

THE COURT: Do you want to go ahead and proceed as far as they can?

MR. DRANE: Yes, that . . . that does help a lot.

THE COURT: All right. Then we'll proceed and get as far as we can and then we'll recess until one o'clock so he'll have an opportunity to get his witnesses and perhpas [sic] have counsel present to sit with him.

MR. DRANE: Go ahead till noon? Go ahead till noon then?

THE COURT: Well, or until the State finishes its evidence and then we'll recess."

The state then proceeded with introduction of evidence and concluded shortly before noon. The court recessed the trial until 1:15. After that recess for lunch, court reconvened, with defendant again appearing without counsel. No questions were asked with respect to any attempts on his part to obtain legal representation. Rather he was invited to make an opening statement or to proceed with evidence, whichever he chose. Defendant elected to produce witnesses, fifteen in number, including himself. At the conclusion of the evidence the court instructed the jury, the prosecuting attorney made closing argument, and defendant undertook to make a closing argument on his own behalf.

After the jury brought in a verdict of guilty, defendant did retain counsel for the purpose of filing a motion for new trial, and that counsel did proceed to file and argue the motion. That retained counsel also appeared at the time of allocution and sentencing. He further filed motion to vacate the sentence and to place defendant on probation or to suspend execution of sentence, and he introduced evidence in support of the latter motion. After that motion was argued and overruled, retained counsel filed this appeal.

■ A defendant in a criminal case, even where it involves only a misdemeanor, has an unquestioned right to retain counsel to handle his defense. As stated in *State v. Jones*, 466 S.W.2d 688 (Mo.1971), this principle is "too well established in our jurisprudence as to call for discussion . . . ." On the other hand, this right does not extend so far as to permit abuse. As was said in *State v. Crider*, 451 S.W.2d 825, l.c. 828 (Mo.1970): "[t]he accused's right to private counsel * * * does not include the right to defeat or impede the orderly processes of the administration of justice."

■ These opposing considerations often require a delicate balancing on the facts of each particular case. The factors generally to be considered in a case where a defendant desires a continuance to replace retained counsel who has withdrawn are: the reasons for withdrawal or discharge, the diligence or lack of diligence by the defendant in attempting to obtain a replacement, and the prejudice or lack of prejudice to the defendant arising from refusal to give him further opportunity to obtain new counsel. Annot., "Withdrawal, discharge, or substitution of counsel in criminal case as ground for continuance," 73 A.L.R.3d 725, Sec. 5 at p. 745 and Sec. 22 at p. 831.

■ Applying that analysis here, defendant should have been given further opportunity to obtain legal representation. Addressing the question of reasons for the withdrawal by Mr. Welliver, the record stands completely silent. So far as this record goes, that withdrawal could have been for some reason entirely personal to the attorney and not motivated by any request from defendant or any conduct on defendant's part.

With respect to diligence by defendant in replacing Mr. Welliver, the record does not even show when defendant first learned of Mr. Welliver's withdrawal. The court minutes do not reflect that defendant was present before the court when the leave to withdraw was granted, and no showing appears as to the communication of that ruling to defendant. Whether or not that information was given to defendant, and if so when, is left as a matter of complete speculation. Moreover, even if it be as-

sumed that defendant was notified of the withdrawal and even though he may have been negligent in not acting sooner than he did to obtain substitute counsel, such negligence would not necessarily be conclusive against him if the lack of counsel was in fact prejudicial to a fair trial. So, for example in *State v. McClinton,* 418 S.W.2d 55, l.c. 59 (Mo.banc 1967) it was held:

"Undoubtedly the defendant was negligent in not obtaining counsel during the interval between his arraignment on March 17, 1965, and the beginning of his trial on April 15, 1965. On the other hand, the record does not demonstrate there would have been any prejudice to the state or great inconvenience if the court had continued the case for a few days with the strict understanding that he must obtain counsel and be ready for trial on the next setting.

\*    \*    \*    \*    \*    \*

"In the circumstances shown by this record, we hold that the failure of the trial court to grant the defendant an opportunity to obtain counsel was an abuse of discretion affecting substantial rights of the defendant. The error is prejudicial and justifies a reversal of the judgment and remand of the cause for a new trial."

Coming to the final and perhaps most important criterion to be considered, there can be little doubt about the serious prejudice caused to defendant. Of first importance is the fact that he went into this trial and continued all the way through the verdict without legal representation of any sort. In this respect, the present case stands in sharp contrast to other cases where the trial court was sustained in denying further opportunity to obtain substitute counsel, but where the defendant did have a lawyer present, even though that attorney may have been one with whom the defendant was not satisfied. See for example *State v. Crider, supra,* and *State v. Gaye,* 532 S.W.2d 783 (Mo.App.1976).

It is true that the trial court offered defendant the noon recess as an opportunity to obtain counsel. Such an offer cannot be considered sufficient, especially because it was coupled with the proposition that the state would proceed to put on all of its evidence before the noon recess. Although defendant verbalized an acquiescence to the court's suggestion, that was apparently premised in substantial part upon a lack of appreciation by defendant of the importance of having counsel present in order to test the state's case by proper objections and cross-examination. Furthermore, what little chance defendant had of retaining counsel if there had been an immediate recess (as requested) before the state had commenced the introduction of evidence, that chance was reduced to the vanishing point when defendant was confined in his efforts to the short noon recess and particularly when any lawyer whom he approached would find himself in the unenviable position of stepping into a case which was already half over. When all is said, defendant's "agreement" seems no more than his taking the best he could get.

The record in this case shows that defendant's performance in his attempts to represent himself was inept, as was to be expected. Under the circumstances disclosed, it can hardly be said that defendant has received a fair trial.

■ The state attempts to justify the action of the trial court in this case by attaching to its brief a so-called "Exhibit A" consisting of a copy of the docket sheet in a prior case for driving while intoxicated which had been filed against defendant in June, 1973, and which was finally disposed of after two trials, in August, 1975. The purpose of this document is to show that in the prior case defendant had hired and then discharged a series of different lawyers. On the basis of this, the state argues that the trial court had the right to take judicial notice of its own files and that because of what defendant did in the prior case, the trial court could conclude that defendant in this case was not acting in good faith.

One trouble with that argument is that a court does not ordinarily take judicial notice of records in another case (although it may

make an exception and do so in the interest of justice). *Layton v. State*, 500 S.W.2d 267 (Mo.App.1973); *Haynes v. State*, 534 S.W.2d 552 (Mo.App.1976); *Thompson v. State*, 569 S.W.2d 380 (Mo.App.1978). In the present case not only was the trial court not obligated to consider the files in the previous case, but it is by no means certain that it did so. The only reference in the transcript to the prior case is the ambiguous statement by the prosecuting attorney that defendant had "been through this legal process before and it took three years to get him to trial." That cryptic reference was in no way amplified by the prosecutor nor was it mentioned by the trial judge as reliance for the action taken by him in the present case.

A still further objection to consideration of said "Exhibit A" is that it is not brought before this court in a proper fashion. An appellate court looks to the transcript on appeal for the evidence, not an appendix attached unilaterally to its brief by one of the parties. *Thompson v. State*, supra at 382[6]. See also *Broyles v. Broyles*, 555 S.W.2d 696 (Mo.App.1977) [9].

But even if we were to consider "Exhibit A" and assume that the trial court also had the prior proceedings in mind, that additional evidence would serve only to highlight and emphasize the importance of the evidentiary gaps in the present case. If Judge Conley was aware of defendant's conduct in the prior case, and deemed that conduct to show an established pattern of abuse of the judicial process, why did he permit Mr. Welliver to withdraw unless and until defendant retained substitute counsel and the new attorney made entry of appearance? Did Judge Cave, who presided over the present trial itself, know for what reason Judge Conley had permitted Mr. Welliver to withdraw and why Judge Conley had not insisted upon entry of appearance by new counsel as a condition for such withdrawal? On what basis did Judge Cave reach the conclusion (if he did) that the withdrawal by Mr. Welliver and defendant's failure to replace him by the date of trial was the same in nature as the withdrawals and delays which took place in the prior case? The answers to these questions are left purely to speculation.[2] Important, precious constitutional rights should not be declared forfeited on such an uncertain basis and without the matter having been clearly brought out in the open in the trial court, with the defendant being given a clear opportunity to respond and to explain, and with a full statement of reasons by the trial court upon which an appellate court can make an intelligent review.

Under the particular circumstances of this case and in view of the limited record presented, the conclusion is required that defendant was not accorded an adequate opportunity to be represented by counsel. The conviction is therefore reversed and the case remanded for new trial.

All concur.

---

**2.** The state in its brief offers some scanty information on these points, but the brief gives no citation to the record in these regards. An independent scouring of the transcript yields no support for the statements in question. The statements of the state's brief in this respect therefore must be ignored.