**Billy J. DEARING, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 62894.

Supreme Court of Missouri,
En Banc.

April 6, 1982.
Rehearing Denied May 11, 1982.

F. Joe DeLong, III, Jefferson City, John Inglish, California, for appellant.

H. Ralph Gaw and Zachary Cartwright, Tipton, for respondent.

RENDLEN, Judge.

This appeal, from a judgment of the Circuit Court of Moniteau County entered February 1, 1980, denying Billy J. Dearing's (appellant's) application for writ of error coram nobis, comes to the writer on reassignment. Here on transfer from the Missouri Court of Appeals, Western District, the cause is decided as though on original appeal, Mo.Const. Art. V, § 10, and the scope of our consideration of this court-tried action is determined by Rule 73.-01(c)(1) which provides such cases shall be reviewed upon "the law and the evidence as in suits of an equitable nature." This means the trial court's judgment will be sustained unless there is "no substantial evidence to support it," or it is "against the weight of the evidence"[1] or unless it erroneously "declares" or "applies" the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In addition, "due regard shall be given to the opportunity of the trial court to have judged the credibility of witnesses." Rule 73.01(c)(2). Mindful of our function and limited scope of review we turn to the claims of error.

1. This latter basis should be employed with caution and only on a firm belief that the judgment is wrong.

2. In 1978 the trial court entered judgment on a misdemeanor conviction from which no appeal

### I.

Appellant first contends the *hearing* court[2] *improperly* failed to make findings of fact and conclusions of law as required by Supreme Court Rule 27.26(i). Such contention is without merit for several reasons. This action is not governed by the special provisions of Rule 27.26, but instead by the general Rules of Civil Procedure. The controlling Rule 73.01.1(b) (1979) (now, Rule 73.01(a)(2)) provided that a party may "*before* final submission of the case" (emphasis added) request the court to make a statement of the grounds for its decision, and if requested the court "shall, include its findings on such controverted fact issues as have been specified by counsel." No such request was made to the hearing court, hence defendant's claim is not well taken. Further, though no timely request was made and no specific findings were required, the court *after* final submission gave the parties an opportunity to submit suggested findings of fact and conclusions of law within ten days but these apparently were never filed. Finally, the rule quite clearly contemplates situations in which no findings are requested, for in such cases, all fact issues upon which no specific findings have been made shall be considered as having been found in accordance with the result reached. Rule 73.01.1(b) (1979) (now Rule 73.01(a)(2)). The contention is denied.

### II.

Appellant next asserts "the [hearing] Court erred in denying defendant's application for writ of error coram nobis for the reason that petitioner [when a defendant in a 1978 misdemeanor conviction] should have been afforded counsel as an indigent" under the Sixth Amendment to the U. S. Constitution. Though not clearly spelled out in appellant's "point" or accom-

was taken. In 1980 the *hearing* court in an independent proceeding denied coram nobis and this appeal stems from that judgment. For sake of clarity we refer to the former as the *trial* court and the latter as the *hearing* court.

panying argument, the essence of this claim is that the hearing court, in this coram nobis proceeding, *erroneously applied the law* when reaching its decision as to the alleged Sixth Amendment violation. The matter to which this claim relates is the September, 1978 trial of an intoxicated driving charge. At the close of that trial the court found Dearing guilty and assessed a fine but no jail sentence. Hence, even if Dearing had clearly shown indigency, there was, in the trial of that misdemeanor, no constitutional or legal requirement for appointment of counsel as no period of incarceration was imposed. *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); *Trimble v. State*, 593 S.W.2d 542 (Mo. banc 1980). Accordingly, appellant's present contention that the hearing court, by its February 1, 1980 order denying the writ, erroneously applied the law, is clearly meritless.

### III.

■ Appellant's next contention appearing in Points III and IV of his brief, is somewhat blurred and the Points do not make clear (as required by Rule 84.04(d)) wherein or why the hearing court erred. Nevertheless we consider the points and have gleaned from the argument that in essence it is claimed there is *no substantial evidence* to support the hearing court's judgment. However, we find the hearing court's refusal of the writ *was* supported by substantial evidence when it determined that the trial court's denial of the defendant's *requested continuance* on the day of the misdemeanor trial (September 1, 1978) did not constitute, as contended, a *wrongful denial of any opportunity* for defendant to obtain legal representation or prepare a defense. The alleged trial error, denial of the requested continuance, was not shown as rising to a constitutional level or of such *magnitude* and *fundamental character* as to compel vacation of the judgment in this coram nobis proceeding. *Arnold v. State*, 552 S.W.2d 286, 293 (Mo.App.1977). While

this alone is sufficient to require a denial of the Points and affirmance of the judgment, a number of additional reasons appear for sustaining the judgment of the hearing court which will be discussed later herein, but first we examine the evidence supporting the judgment.

On July 17, 1978, Dearing was arrested and charged with driving while intoxicated, a misdemeanor under § 564.440, RSMo 1969.[3] Dearing refused a proffered Breathalyzer, but immediately posted bond and was released. Shortly he employed counsel, who had represented him earlier that year on another charge, and his fee arrangement involved the forgiveness of past charges for repair work in exchange for the legal services. Counsel moved for and obtained a continuance to August 2, but the cause was not tried that date. On or about August 1, counsel moved to withdraw. Defendant had discussed this proposed withdrawal with counsel, and on August 13, received a letter from the court (dated August 11) advising that leave to withdraw had been granted and that he, Dearing, was to appear in court "with counsel ready for trial" on September 1, 1978. Defendant remained free on bail during this time and concedes he made no attempt to hire a different attorney contending only he lacked sufficient funds.

When defendant appeared on September 1, and requested a further continuance, the trial judge denied this request stating "defendant has had adequate time to obtain counsel and has failed to do so. The court finds by said failure that defendant has waived right to counsel." In this connection Dearing did not request that an attorney be appointed by the court and conceded during cross-examination in the coram nobis hearing that he had, in fact, agreed to proceed pro se, but added "I had no choice". Nothing suggests there was a prospect for him to have secured new counsel on September 1 or reasonably soon thereafter,

---

**3.** As a first offender, he was subject to a fine or a term in the county jail not exceeding six months, or both fine and imprisonment.

which negates his claim for the (second) continuance, as the likelihood of obtaining funds to employ counsel was shown neither to the trial court in 1978 nor to the hearing court in 1979. This failure is another of the facts bringing to naught Dearing's contention that the trial court abused its discretion when deciding to proceed. It also bears reemphasis that Dearing had been given express notice in writing to appear *with counsel* for trial on September 1. He was fully apprised in July and August of 1978 of his situation's potential.

∎ In sum, Dearing's own actions and inactions annulled his claim that the alleged trial error somehow rises to the level of a constitutional error or a grievance of such magnitude as to compel vacation of the judgment. *Arnold v. State*, 552 S.W.2d 286, 293 (Mo.App.1977). If Dearing had sought an appeal, which he failed to do, the question of a continuance could have been reviewed, but would not have worked reversal.

∎ After denial of the continuance, Dearing requested an opportunity to contact persons to testify in his behalf and the court recessed that he might telephone such witnesses. However, he was unable to obtain any witnesses and the trial court, when so informed, inquired as to what beneficial testimony Dearing anticipated from such persons. Receiving Dearing's explanation, the court recognized the purported testimony would not materially assist defendant and that further recess would serve no useful purpose. This deficiency in Dearing's position is carried into the present proceeding, as he neither *pled* nor *proved* what testimony might be adduced on retrial to work acquittal, hence, he failed to carry this burden of showing that a continuance clearly would have been of benefit, an indispensable ingredient for his claim of error in the hearing court's denial of the writ. In this connection it is worth mention that as an accommodation to Dearing, the trial court issued a subpoena for a witness who did not appear.

At the close of trial, impressed with Dearing's situation, the court imposed a fine of only $150, and suspended $100 on condition that he complete ARTOP (Alcohol Related Traffic Offenses Program) in Jefferson City. This modest fine (net $50.00) is another indication of the fair treatment accorded defendant.

Had Dearing truly been dissatisfied and convinced error had been committed in these particulars, review by appeal was readily available. To commence the review process, Dearing needed only file notice of appeal[4] within the ten days after the judgment became final,[5] and was afforded an additional safeguard, when he failed to meet the time limitation prescribed, in that he might have

> file[d] a notice of appeal in the trial court within *twelve months* from the *date of final judgment* if a special order to do so has been first obtained from the appropriate appellate court ... for reasonable cause shown. Rule 28.07 (1978). (Emphasis supplied).

Thus, for one year (from October 1, 1978, until October, 1979), appellant had the opportunity to file for late notice of appeal. During this year Dearing was busy in various courts pursuing a variety of actions attacking his conviction. In January, 1979, he filed his pro se motion to vacate under Rule 27.26[6] in the Circuit Court of Moni-

---

4. Under the applicable rules, no motion for new trial was required in this court-tried misdemeanor. See Rules 73.01 and 28.18 (1978). Compare Rule 27.20(a) (1978) which requires a motion for new trial be filed ten days after *the* [jury's] *verdict.* Compare also new Rule 29.11(e), effective January 1, 1980.

5. Rules 81.04 and 28.03 (1978). The judgment, entered September 1, 1978, became *final* in 30 days, Rules 81.05 and 28.03 (1978).

6. This motion was set for hearing on several occasions and was once dismissed but reinstated March 30, 1979. At that time the court appointed Mr. Walter Nowotny to represent appellant and set the motion for hearing April 23, 1979. On April 19, Mr. Nowotny moved to withdraw and was granted leave on April 23. Mr. Fred Slough was then appointed to rep-

teau County. From March through October 1, 1979 (and continuously thereafter), he has been represented serially by four attorneys. Still no appeal was undertaken from his misdemeanor conviction, though Dearing sought and was denied habeas corpus relief in the federal court. In September, 1979, the instant action was converted from a Rule 27.26 motion to an application for writ of error coram nobis and a hearing conducted October 23, 1979. Following denial of that application on February 1, 1980, this appeal was taken.

██ If an appeal had been taken from the misdemeanor conviction, appellant's assertion of the alleged trial error would have been measured against the rule that granting a continuance is within the sound discretion of the trial court, *State v. Stout*, 604 S.W.2d 710, 715 (Mo.App.1980), the exercise of which will not be interfered with lightly on appeal. *State v. Turner*, 623 S.W.2d 4, 11 (Mo. banc 1981); *State v. Jefferies*, 504 S.W.2d 6, 8 (Mo.1974). However, in this coram nobis proceeding appellant assumes an additional burden for he must allege and prove not only that the trial court abused its discretion, but that the abuse rises to the level of constitutional infringement or a clear violation of fundamental right. *Arnold v. State*, 552 S.W.2d 286, 293 (Mo.App. 1977).

██ The issuance of a writ of error coram nobis is not a matter of right, but rests in the court's discretion, *Arnold v. State*, 552 S.W.2d 286, 293 (Mo.App.1977), and the circumstances alleged and proved must be so inexorable that the court must find not only error, but that it is a grievance of such magnitude and of a "fundamental character so as to compel relief." *Id.* at 293. Here, the issue has neither been properly alleged nor proved. Further, the action, civil in nature, is addressed to the hearing court for correction of errors of fact affecting the validity of the proceedings which "at the time of the original proceedings *were unknown to the party*

seeking relief and to the court." (Emphasis added). *Arnold v. State, supra* at 291. The right to relief by means of the writ is neither absolute nor allowed as a matter of right or routine. *Powell v. State*, 495 S.W.2d 633, 635 (Mo. banc 1973). It issues only when made to appear with reasonable certainty that some error of fact not apparent on the record was unknown to the applicant and will *not* lie where the now complaining party knew, or by the exercise of reasonable diligence might have known, of the alleged errors at the time of trial. *Arnold v. State, supra* at 291. Dearing not only knew that the case was set for trial and that he was expected to appear with counsel, but of course was fully aware that the continuance was denied at the time of trial. Nothing appears which he may now claim was unknown to him at the time of the original proceeding and was unavailable for a claim of error on appeal. Additionally, the burden was on movant to properly *plead* these critical ultimate facts and *support them* by a preponderance of the evidence; *Arnold v. State, supra* at 291; this he failed to do. Further, Dearing failed to plead and prove that if the judgment had been vacated, new evidence was available or a different manner of presentation would occur which would be reasonably calculated to work acquittal. Indeed, as previously noted, when the trial court permitted Dearing time to secure the presence of witnesses, and the witnesses were not forthcoming, the Court asked him to describe the nature of the testimony expected from such witnesses. From Dearing's explanation it became apparent the purported testimony would have no effect on the outcome of the case. Appellant here has not demonstrated that the judgment of the hearing court must fail for want of substantial evidence *to support it.*

██ An additional principle, in itself sufficient to bar the writ, is that the appellant was required to allege and prove *sound reasons* for his failure to seek appropriate

resent appellant and hearing was set for May 14, 1979. However, on motion, Mr. Slough was granted leave to withdraw on May 14, 1979,

and on that date the court appointed Mr. John Inglish, who has been joined by Mr. Joseph DeLong, to represent appellant.

relief via appeal. *Turnbough v. State*, 544 S.W.2d 894, 895 (Mo.App.1976). He had done neither. The "facts" which appellant claims tainted his trial were *known* to him at the time the trial occurred, but neither in his coram nobis petition nor at the evidentiary hearing were *any* reasons, much less *sound* reasons, alleged or advanced for his failure to seek appropriate relief by way of *appeal.* This avoidance of the prescribed appellate process may not be employed in the manner here attempted to vacate a trial court's judgment. A defendant may not, by merely alleging an invalid judgment and urging in general terms a so-called constitutional claim,[7] set the stage for coram nobis for which no time limit is prescribed. This bypass of the established process and tardy assertion of a claim labeled "constitutional" is not to be encouraged. For discussion of these principles in a similar context, see *Weir v. State*, 589 S.W.2d 256, 258 (Mo. banc 1979).

 Coram nobis, a civil action, *Chrisco v. State*, 586 S.W.2d 407, 409 (Mo.App.1979), governed by the Rules of Civil Procedure, is a narrowly molded action of limited application, not to be expanded to undefined limits as a substitution for appeal.

The hearing court's judgment denying the application for writ of error coram nobis is affirmed.[8]

WELLIVER, MORGAN and HIGGINS, JJ., concur.

---

7. This claim, raised for the first time in the application for coram nobis, also contravenes the requirement that it be asserted at the earliest opportunity. *Arnold v. State, supra* at 292–93.

8. Appellant had been convicted in July of 1975, in the Circuit Court of Benton County, of an insufficient check funds charge and placed on probation for five years. In November, 1978, his bench parole was revoked and the five year sentence ordered executed. Now confined in the penitentiary, appellant contends his parole was revoked because of the misdemeanor conviction *sub judice.* While this is not a basis for evaluating whether the trial court erred in refusing to grant the requested continuance, if as appellant contends it is somehow material, his proof has failed to show that the parole revocation stemmed from the conviction for driving

BARDGETT, J., dissents in separate dissenting opinion filed.

DONNELLY, C. J., and SEILER, J., dissent and concur in separate dissenting opinion of BARDGETT, J.

BARDGETT, Judge, dissenting.

I respectfully dissent because I believe that appellant was denied the fundamental right secured by Mo.Const. art. I, § 18(a), to be represented at trial by counsel and, to that end, should have been afforded a short continuance on the first setting to try to obtain an attorney.

At the risk of appearing presumptuous, it seems that the reasoning of the principal opinion goes something like this:

1) appellant had no constitutional right to appointed counsel, *even if* indigent in this case;

2) appellant had no excuse for not getting an attorney before trial, *even though* indigent;

3) appellant had no right to complain about not getting a continuance to obtain an attorney *because* he was indigent and could not afford one anyway.

And, even if it was error for the trial court to have refused a continuance, no relief can be granted in this writ of error coram nobis case because

1) the alleged error should have been presented on appeal and there is no excuse

while intoxicated. The only evidence adduced was that inquiry was made into the conviction at the revocation proceeding. At most it was shown that the DWI conviction was *one* of the grounds for parole revocation. While this might be germane to a showing of "presently existing adverse legal circumstances" essential for a writ of error coram nobis under established case law, *see, Chrisco v. State*, 586 S.W.2d 407, 409 (Mo.App.1979), *Arnold v. State*, 552 S.W.2d 286, 291 (Mo.App.1977), *McCormick v. State*, 523 S.W.2d 854, 855 (Mo. App.1975), *Howard v. State*, 493 S.W.2d 14, 23–24 (Mo.App.1973) (Billings, J. concurring), it does not bear on the principal issue before us of whether there was a reasonable exercise of the trial judge's discretion in proceeding with the trial on September 1, 1978.

for not appealing after judgment or seeking permission to file a late notice of appeal, nor has appellant offered any sound reasons for not appealing; and

2) the alleged error was known at the time of trial and did not rise to a level of constitutional infringement or a clear violation of a fundamental right.

Yet, when *all* the facts are considered, as contained in the record, the trial court's denial of a continuance in order for appellant to retain counsel was, in my opinion, an abuse of discretion prejudicially affecting the fundamental and constitutional rights of appellant under Mo.Const. art. I, § 18(a) and under this Court's holding in *State v. McClinton*, 418 S.W.2d 55 (Mo. banc 1967), which is discussed later.

Prior to the instant proceedings, appellant had been convicted of issuing an insufficient funds check in Benton County on July 18, 1975, sentenced to five years' imprisonment, and placed on probation by the court. On July 17, 1978, appellant was arrested and charged with driving under the influence of alcohol. On the date of his arrest, he retained private counsel. Payment for counsel's services was the cancellation of a bill for repair services due by the attorney to appellant.

On August 1, 1978, private counsel sought to withdraw and according to the court's docket sheet the motion was granted the same day. Yet, appellant did not know of the court's action until August 13th. There is no indication anywhere that I can find that "defendant had discussed this *proposed* withdrawal with counsel", as stated in the principal opinion. In fact, appellant testified that his attorney never told him why he was withdrawing. At most, the record indicates that sometime around August 1st appellant received notice that a motion to withdraw had been filed. But, appellant did not know that he did not have an attorney until August 13th, only a couple of weeks before the trial was to begin.

On September 1, 1978, appellant appeared in court and requested a continuance to secure legal counsel. He did not request to have an attorney appointed. The trial court denied the request and ordered him to trial. Hardly a case fitting the description in the principal opinion of one where appellant "agreed to proceed pro se," but rather, as the principal opinion admits, it was a situation where appellant "had no choice." As justification for its denial of appellant's request, the trial court noted on its docket sheet that appellant had time to find an attorney and by failing to do so had waived that right, even though appellant received no income during the period following his arrest (July 17, 1978) and the date of trial (September 1, 1978) and was possessed of assets consisting only of a truck and tools which had been mortgaged to their value.

About two months after appellant's DWI conviction, his probation on the check conviction was revoked. The sentence of five years' imprisonment was ordered executed on November 17, 1978, and he was imprisoned. While in prison, as a result of the revocation and pursuant to the sentence on the check charge, appellant, on January 2, 1979, filed a motion under Rule 27.26 to vacate the conviction and sentence of the driving while intoxicated conviction alleging that he was not afforded his right to counsel. Later, appellant's 27.26 motion was changed to an application for a writ of error coram nobis. In an opinion written prior to this cause being transferred, the court of appeals, after an extensive examination of proper use of writ of error coram nobis, concluded that "[t]he matter is properly one for a writ of error coram nobis and not a regular 27.26 motion because appellant does not attack the judgment for which he is in custody."

After his DWI conviction, appellant did not file an appeal within the prescribed time limits. But then appellant is not a lawyer. The principal opinion agrees that appellant was without legal assistance until March 1979—long after the time for a direct appeal had run. But the principal opinion's assertions that appellant could have filed a late notice of appeal and that "in all proceedings since March, 1979 appellant has been represented by counsel" are, I believe, somewhat misleading.

Appellant did what he knew how to do. He was in prison and so he filed a pro se 27.26 motion on January 2, 1979, just four months after conviction. According to the court's docket sheet, the case was called on January 26, 1976. Neither appellant nor an attorney for him appeared. Appellant was in prison and he didn't have a lawyer. The court continued the hearing until March 2, 1979, directing that the clerk notify appellant that unless he appeared in person or by an attorney on that date the motion would be "dismissed for want of prosecution." Of course, on March 2d, appellant did not appear in person because he was in prison in Missouri, nor did an attorney appear because appellant was indigent, and so his motion was dismissed.

On March 30, 1979, the court on its own motion set aside the dismissal and appointed an attorney for appellant. A new hearing was set for April 23, 1979. On April 19, 1979, the appointed attorney filed a motion to withdraw. On April 23d the motion was granted and a new attorney appointed. There is no indication appellant played any part in the withdrawal of the attorney. Appellant remained in prison. A hearing was set for May 14, 1979. On May 3d, the second attorney sought to withdraw and the judge granted that motion on May 14th. Appellant wasn't there—he was in prison. On May 14th, another attorney was appointed with another hearing set for June 4, 1979. At the June 4th hearing, appellant was in court with his appointed counsel and the court reinstated, on the record, its order of March 2, 1979, dismissing appellant's 27.-26 motion filed January 2, 1979. This appears to be with appellant's consent so as to proceed with a writ of habeas corpus in federal court and also because this Court denied a petition for writ of mandamus in *Dearing v. Moniteau County*, S.C. No. 61251. The sequence is difficult to follow, but on September 13, 1979, a petition for writ of error coram nobis was filed in Moniteau County Circuit Court. The transcript reflects that the judge, on September 13, 1979, was trying to determine whether to proceed on the previously filed 27.26 motion or the writ of error coram nobis. On that

same day, September 13, 1979, the court was asked by appellant's attorney to consider appellant's motion as a writ of error coram nobis and the *state* requested a continuance to consider the writ, even though the same issue had been before the court since January 2, 1979, in the 27.26 motion. A continuance was granted until October 18, 1979, but on that date the matter was continued again until October 23, 1979, when the hearing was finally held. This was several weeks after the date appellant would have had "the opportunity to file for late notice of appeal."

Appellant was not actually or continually represented by counsel until final counsel was appointed on May 14, 1979. Although the principal opinion asserts that appellant was represented in all proceedings after March 30, 1979, which was when the first attorney was appointed, the only proceedings that actually took place between March 30th and June 4th consisted of withdrawals by and appointments of court-appointed attorneys. .Due to delays occasioned by the court, state, and continued withdrawals of appointed counsel for no reason indicated on the record, appellant should not be blamed for not filing a late notice of appeal, especially when his application for writ of error coram nobis was not even heard until October 23, 1979, or ruled on by the trial court until February 1, 1980. It seems to me that the principal opinion penalizes appellant for being poor and failing to have any legal acumen. Of course, the lack of legal acumen on the part of nonlawyers is the reason for the constitutional requirement that a person is entitled to have a lawyer represent him in criminal proceedings. And, as stated previously, I believe that the trial court's denial of a continuance in order for appellant to retain counsel at his DWI trial was an abuse of discretion violating appellant's substantial rights under Mo.Const. art. I, § 18(a).

In all criminal prosecutions a defendant has *the right to appear and defend* in person and *by counsel* as provided in Mo.Const. art. I, § 18(a). *See also* Rule 31.02(a). Simply, "[a] defendant in a criminal case,

even where it involves only a misdemeanor, has an unquestioned right to retain counsel to handle his defense." *State v. Drane*, 581 S.W.2d 89, 91 (Mo.App.1979). Hence, the issue in this case is not whether the trial court should have appointed counsel for appellant as an indigent or was required constitutionally to do so; but rather, whether the trial court should have granted appellant a continuance in order for him to obtain an attorney of his own. *State v. McClinton*, 418 S.W.2d 55 (Mo. banc 1967), is similar factually to the instant case and, I believe, dispositive.

In *McClinton*, the defendant was charged with and convicted of the misdemeanor of stealing under $50. He had been arraigned on March 17, 1965, and the trial was set for 28 days later, April 15, 1965. Defendant appeared in court and requested time to procure an attorney. The trial court did not afford defendant a continuance to obtain counsel. As this Court noted:

At the beginning of the trial, the trial judge interrogated the defendant in the following manner:

"THE COURT: Are you ready for trial?

A Yes, sir.

THE COURT: Do you have a lawyer?

A No, sir.

THE COURT: Do you wish to go to trial without a lawyer?

A Well, if you give me a chance to get one, I will get one.

THE COURT: You have had a lot of chance to get a lawyer. You have been out on bond for over a month.

A Yes, sir.

THE COURT: Why didn't you get a lawyer?

A Well, I didn't think it was necessary to. I am not guilty of the crime.

THE COURT: That is what we are going to find out. What changed your mind?

A Well.

THE COURT: What?

A I guess because you just said that, that was all.

THE COURT: What did I say?

A Did I want to go to trial with a lawyer.

THE COURT: I said, do you want to go to trial without a lawyer.

A Without, yes, sir.

THE COURT: All right. Have a seat there."

*Id.* at 58.

Although the defendant in *McClinton* did not preserve or present the issue on appeal, this Court believed the right to have an attorney to be of such magnitude that it *sua sponte* considered whether it was error for the trial court to refuse *McClinton* additional time in which to procure counsel. Citing Mo.Const. art. I, § 18(a), the *McClinton* Court stated, "The denial of a person's right to be represented by counsel constitutes a violation of a constitutional right and may justify the reversal and remand of a judgment of conviction." 418 S.W.2d at 58.

After examining the defendant McClinton's efforts at cross-examining the state's witnesses, his taking the stand and permitting the state to question him on direct examination, and the trial court's recalling the prosecuting witness to the stand at the conclusion of defendant's testimony, this Court observed that "[t]he record demonstrates ways in which legal counsel could have been of service to the defendant."

Judge Storckman, writing for a unanimous Court, stated:

Undoubtedly the *defendant was negligent in not obtaining counsel* during the interval *between his arraignment* on March 17, 1965, *and the beginning of his trial* on April 15, 1965. On the other hand, the record does not demonstrate there would have been any prejudice to the state or great inconvenience if the court had continued the case for a few days with the strict understanding that he must obtain counsel and be ready for trial on the next setting. Instead the trial was conducted in the manner described with the result that the court immediately found the defendant guilty

as charged and sentenced him to serve sixty days in the workhouse.

In the circumstances shown by this record, we hold that the failure of the trial court to grant the defendant an opportunity to obtain counsel was an abuse of discretion affecting substantial rights of the defendant. *The error is prejudicial and justifies a reversal of the judgment and remand of the cause for a new trial. Id.* at 59 (emphasis added).

Similarly, in the instant case, appellant had a right to have counsel appear with him and at this first setting of the case he should have been granted a continuance for the purpose of getting an attorney. One of the points alleged in the postconviction proceeding and presented on appeal is whether Dearing's right to representation was denied by the trial court's denial of Dearing's request for time to get an attorney.

Appellant did not merely intimate that he would desire to obtain counsel if permitted at his DWI trial. Instead, as reflected by the trial court docket, he asked specifically for a continuance so he could try to obtain counsel. Although appellant here *may* have been negligent, as this Court acknowledged *McClinton* was, in not seeking to get an attorney for the two and one-half weeks before trial in which he was without counsel, appellant's neglect does *not*, in itself, amount to a waiver of his right to counsel. No matter what the reason for appellant not seeking an attorney's services for two weeks before trial, asking for a continuance to obtain an attorney is the antithesis of waiving the right to retain counsel.

In the instant case, the record, as it did in *McClinton*, reveals ways in which legal counsel could have been of help to appellant. Appellant wanted to subpoena witnesses on his behalf—a right guaranteed by Mo.Const. art. I, § 18(a). *See also* § 491.-310, RSMo 1969. During a short recess, appellant was allowed to telephone the witnesses, but was unable to reach them. Although appellant thought the judge subpoenaed one witness on the day of trial, the witness never appeared. When appellant notified the judge that he was unable to

contact the witnesses and also what the witnesses would testify to, the judge informed appellant that he did not think the witnesses's testimony would be of any benefit, and the trial proceeded. Appellant did not recognize or know how to utilize his right to the process of subpoena. Furthermore, if appellant believed there were irregularities in the proceedings, he could have appealed pursuant to § 543.290, RSMo 1969, but appellant is not an attorney.

There is little doubt of the prejudice to appellant. He "went into his trial and continued all the way through the verdict without legal representation of any sort." *State v. Drane, supra,* 581 S.W.2d at 92. He received no opportunity from the trial court to obtain counsel. His effort to secure witnesses was inept, at best.

Moreover, the record does not demonstrate that there would have been any prejudice to the state, any inconvenience to the court, or any attempt "to defeat or impede the orderly processes of the administration of justice," *State v. Crider,* 451 S.W.2d 825, 828 (Mo.1970), had the trial court "continued the case for a few days with the strict understanding that he [appellant] must obtain counsel and be ready for trial on the next setting. Instead . . . the court immediately found the defendant guilty as charged . . . ." *State v. McClinton, supra,* 418 S.W.2d at 59.

In *McClinton*, the Court held "the failure of the trial court to grant the defendant an opportunity to obtain counsel was an abuse of discretion affecting substantial rights of the defendant", *id.*, and reversed the conviction. Here, the same error is also prejudicial. Whether appellant could at the time he asked for a continuance have afforded counsel is immaterial. He should have been allowed to try because he had a right to be represented by counsel and no inconvenience, prejudice, or impeding of justice would have occurred. Yet, the principal opinion would deny appellant that prospect because "the likelihood of obtaining funds to employ counsel was shown neither to the trial court in 1978 nor to the hearing court in 1979." In other words, appellant had no

right, as expressed in *McClinton* and guaranteed by Mo.Const. art. I, § 18(a), to try to get an attorney to represent him because he would probably be unsuccessful since he was poor. I believe that the judgment of conviction entered in cause no. 12437, Magistrate (Associate Circuit) Court of Moniteau County on September 1, 1978, should be vacated and remanded to the trial court and the judgment in the instant proceeding should be reversed. Therefore, I dissent.