State v. Sibley.

THE STATE v. SIBLEY, *Appellant*.*

In Banc, December 10, 1895.

1. **Evidence**: IMPEACHMENT OF WITNESS : PROOF OF UNCHASTITY OF MALE. Evidence of general bad reputation for chastity is admissible to impeach one testifying as a witness, and the rule is applicable to male as well as female witnesses. Per GANTT, J., BRACE, C. J., BARCLAY and MACFARLANE, JJ., concurring.

2. ———: ———: ———. The foregoing rule held to apply to a defendant testifying in his own behalf in a prosecution for defiling a female confided to his care. *I b.*

*Appeal from Mississippi Circuit Court.*—HON. H. C. RILEY, Judge.

REVERSED AND REMANDED.

*George S. Elliott* and *William Hunter* for appellant.

*R. F. Walker*, attorney general, *Morton Jourdan*, assistant attorney general, and *J. J. Russell* for the state.

---

*These opinions should have accompanied the opinion reported in 131 Mo. 519, but were not certified to the reporter by the clerk. The opinion of GANTT, J., reported here, is the controlling opinion on the point decided, a majority of the court having concurred therein.    REPORTER.

SEPARATE OPINION.

GANTT, J.—As stated by my associate, I dissent from so much of the opinion of the court as discredits and overrules *State v. Rider*, 95 Mo. 486, and *State v. Shroyer*, 104 Mo. 441.

I do not consider that *State v. Grant*, 79 Mo. 113, is authority for the distinction made between the impeachment of male and female witnesses. In that case, SHERWOOD, J., simply said: "Under the rulings in this state a witness may be impeached not only by a general reputation as to veracity, but the inquiry may extend to the general moral character or reputation of the witness. * * * And this ruling has been made in cases as to the general reputation of a female witness respecting chastity. Similar rulings have been made in some other states." I am unable to find in this extract any foundation for the distinction now sought to be established between the credibility of the two sexes. The mere assertion that the general character of the female might be shown falls far short of the announcement that a male witness could not be thus attacked. The case of *Com. v. Murphy*, 14 Mass. 387, cited as authority in the *Grant* case, drew no such distinction.

As I interpret *State v. Grant*, this court simply relaxed the old rule confining the impeachment to general bad reputation for truth and veracity by permitting evidence showing the general moral character of the witness to be bad, and as an example of this the Massachusetts case, permitting evidence of prostitution of a female witness, was cited. *State v. Egan*, 59 Iowa, 636.

It is important to get at the reason underlying the decision, and the Massachusetts court put it upon the ground of the loss of moral principle. This testimony

is admitted upon the ground that the prostitute, by her life of vice, has so impaired her moral sense that the obligation to speak the truth is no longer binding, or has become more or less lax. If this be true of the female, why not true of her habitual companions; and why, though there be degrees in the vice, may not a man's disregard of the laws of chastity, which compel his association with the prostitute, be shown as tending to prove a disposition to lightly regard the obligations of his oath. The rule only admits the evidence when it has ripened into a general reputation for the vice. For my part, I think it rests upon the same foundation whether the witness be male or female. It was so ruled by a unanimous court, before its separation into divisions, in *State v. Rider*, 95 Mo. 474, and was followed by division two, as then constituted, in *State v. Shroyer*, 104 Mo. 441; and I concurred in the last case, and I see no reason for changing the view I then held.

For these reasons I most respectfully dissent from the views of Judge BURGESS on this point. BRACE, C. J., and BARCLAY and MACFARLANE, JJ., concur with me on this proposition.

SHERWOOD, J. (*dissenting*).—Although I concur in reversing the judgment herein, I do not think the cause should be remanded, because I do not believe that this case falls within the penalties of section 3487, Revised Statutes, 1889. My idea is that there must be an actual or affirmative confiding; at any rate *something more than mere intermarriage with the mother of the girl betrayed*. If the relations existing between stepfather and stepdaughter are sufficient to sustain this prosecution, then, under the same section, *a father* would also be subject to the same provisions; but no one would contend that a *father* is subject to such a

State ex rel. v. Johnson.

prosecution, and *this because his daughter has not been confided to his care and protection within the meaning of the statute.*

*Constructive* crimes are not known to our law. Men are not to be made subject to criminal laws by implication. Doubtless defendant is as reprehensibly guilty as though his case fell within the *precise terms* of the statute; but this it does not do. Touching this subject, an eminent author says: *"Meaning of Strict Interpretation.*—Such statutes are to reach no further in meaning than their words; no person is to be made subject to them by implication, and all doubts concerning their interpretation are to preponderate in favor of the accused. Only those transactions are covered by them which are within both their spirit and their letter." Bish. Stat. Crimes, sec. 194. Criminal statutes, as Mr. Bishop happily phrases it, are *inelastic* and can not be made to embrace cases without their letter, but within the reason and policy of the law. Courts can not, in such cases, supply a *casus omissus* in the statute. *State v. Lovell*, 23 Iowa, 304.