**STATE of Missouri, Respondent,**

v.

**Ray Gene STOUT, Appellant.**

**No. WD 31048.**

Missouri Court of Appeals,
Western District.

Aug. 4, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 2, 1980.

Application to Transfer Denied
Oct. 15, 1980.

Thomas J. Cox, Jr., Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jerry L. Short, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P. J., and PRITCHARD and SWOFFORD, JJ.

SWOFFORD, Judge.

The appellant, Ray Gene Stout (defendant), was tried on information charging him with the crime of selling a Schedule I controlled substance (marijuana) on September 20, 1977, in violation of Section 195.017 RSMo 1969 (Laws 1971, pp. 241–247). The information was filed on March 14, 1978, he was arraigned on March 27, 1978, and entered a plea of not guilty. He was represented at this proceeding by the Public Defender's Office of Boone County, Missouri, and acting through D. M. Strauss, his counsel, filed a Motion for Discovery. Thereafter, his case was tried before a jury on March 14, 1979, he was found guilty, and his punishment was assessed at 15 years imprisonment, upon which verdict a sentence and judgment was thereafter entered. It is from this judgment that defendant appeals.

The defendant raises three assignments of error or points on this appeal, which may be thus summarized:

(I) The court erred in refusing to grant defendant's motion for a judgment of acquittal at the close of the State's evidence because no evidence was elicited to identify the man on trial as the man referred to as Ray Gene Stout, and that the State, therefore, failed to prove beyond a reasonable doubt every element necessary to prove the crime charged; (II) the defendant was denied effective assistance of counsel at the trial; and (III) the court erred in denying

defendant's motion for a continuance on the morning the trial was commenced, in order to give him an opportunity to secure private counsel.

The facts pertinent to Point I are that on September 20, 1977, Trooper John J. Bickers, an undercover patrolman with the Missouri State Highway Patrol, was directed by an unidentified informant to Room 3 at the Redwood Motel in Centralia, Missouri as a place where drugs could be purchased. Bickers proceeded to that location, was admitted to the room by a Billy Ankron, and introduced to the seven occupants of that room, one of which was the defendant. Bickers noted that there were several large plastic garbage bags and many small clear plastic bags in the room which appeared to contain a leafy substance. The defendant informed Bickers that the marijuana was of good quality and that he was willing to give Bickers a good price. After a short time, Bickers agreed to purchase 3 pounds of marijuana for $300.00. The money was exchanged and Bickers left with his purchase. Chemical analysis of the contents of the bags purchased by Bickers established that they, in fact, contained marijuana. The prosecution of Ray Gene Stout, the defendant, and his subsequent conviction followed.

■ The defendant's Point I, as has been noted, charges the trial court with error in denying a motion for acquittal because defendant claims he was not properly identified by competent evidence during the trial as the defendant Ray Gene Stout, and that, therefore, the State's case failed.

A careful review of the transcript of the trial proceedings clearly indicates that this Point I is without merit. It should be noted that the defendant was on trial as the sole defendant, was present through all trial proceedings with counsel, and, while it is true that no one ever specifically identified the defendant by hand on the shoulder or description of appearance or clothing, at the trial, there could have been no possible confusion on the part of the jury as to the identity of the person standing trial.

No question was ever raised during arraignment, a year of appearances for trial settings, and continuances, as to identity, and this contention was injected into the case only after the State had rested.

Viewing the transcript and applying the principle that "all substantial evidence supporting the verdict will be considered as true and all legitimate inferences will be indulged", *State v. Taylor*, 324 S.W.2d 643 (Mo.1959), the following with reference to identification appears:

During the oral instructions and voir dire examination by the court of the jury venire preceding the final jury selection, the court advised the panel of prospective jurors that "the defendant is represented here by *Mr. David Strauss*, the Public Defender".

During voir dire examination of the panel by the State, the Special Prosecutor advised the panel:

"The Judge did point out to you *David Strauss* over here who's the attorney for the defendant. He's the Boone County Public Defender."

Also, he pointed out to the panel Trooper Bickers and Mr. Charles Durham, the Highway Patrol chemist, both of whom were in the courtroom during voir dire.

Then the transcript shows that the Prosecutor addressing the jury panel said:

"Do any of you know the defendant, *Mr. Ray Gene Stout? He's seated over here with his lawyer. This is Mr. Ray Gene Stout.* Do any of you know him personally?

The State's first witness was Trooper Bickers, who testified on direct examination about his trip to the Redwood Motel and his admittance to Room No. 3 on the night of September 20, 1977. He was then asked on direct examination:

"Q. Were you introduced to the persons in the room?

A. Yes, I was.

Q. *Was the defendant one of the people to whom you were introduced?*

A. *Yes, sir.*

Q. All right. *Do you recognize the defendant in this case as one of the persons that you met in that motel room on that specific evening?*

A. *Yes, I do.*

Q. All right. *Do you positively identify him* as having been there that evening?

A. *Yes.*"

Later in his direct examination, this appears:

"Q. Did you make an offer to purchase from him some of this material?

A. Yes, I did.

Q. And did you, in fact, give him some money for some of that material?

A. Yes, sir, I did.

Q. How much money did you give him?

A. I gave him $300.00."

And still further in his direct examination:

"Q. All right, sir. Now what did you receive? Did you actually give the money to him physically?

A. Yes, I did, and I watched him place it within his wallet.

Q. Did he actually take custody and physical possession of the money?

A. Yes.

Q. Put it in his own hand, and *that is Ray Gene Stout over here at the table*, and you placed it in his hand?

A. *Yes, sir, I did.*

Q. And then what did he do, put it where?

A. Placed it in his wallet."

On redirect examination the following appears:

"Q. You did, in fact, speak to Mr. Stout, is that right?

A. Yes, sir, that's correct.

Q. Uh, did you make the deal with Mr. Stout?

A. Yes.

Q. Did Mr. Stout point to the marijuana that you were to take?

A. Yes.

Q. And did Mr. Stout accept the money from you?

A. Yes, he did."

The State then produced Mr. Charles S. Durham, Chemist for the Missouri Highway Patrol Laboratory, who examined and identified the marijuana. The State then rested its case.

Counsel for the defense then presented an oral motion for a directed verdict of acquittal at the end of the State's evidence, which the court overruled.

The defense chose to offer no evidence, and accordingly, of course, the defendant did not testify. The case was argued and submitted to the jury in that state of the record, and the jury returned a unanimous verdict against the defendant, as above noted, and recommended that he be imprisoned for 15 years.

In a case very similar factually to the case at bar as to the claim of lack of proper identification, *State v. Stevenson*, 550 S.W.2d 598 (Mo.App.1977), this court found that the transcript in *Stevenson* presented "no issue of identification" and "the entire tenor of the trial is such that no possible confusion could have occurred". As this court said in *Stevenson*, while the argument was "novel", it was "bereft of substance".

In the case of *State of Missouri v. Austin*, 496 S.W.2d 799, 804 [1] (Mo. banc 1973), the defendant was charged with assault with intent to kill with malice, arising under circumstances which showed that a man had shot a police detective, the identity of the defendant as the assailant was called in question, and the Supreme Court held that the testimony of the police detective, that he recognized the defendant as the man who shot him, constituted substantial evidence of defendant's guilt of the charge. The *Austin* court held that in the light of such testimony, the question of identification could only be properly resolved by the jury. This Court holds that the contention as to identification in this case is "bereft of substance" and Point I is ruled against the defendant.

The defendant's Point II has become muted by reason of the situation revealed in the briefing of this case on appeal. The defendant–appellant's main brief was prepared and filed by lawyers appointed by the court below to handle his appeal. In the brief filed by them, a substantial emphasis

was placed on the argument that the defendant had been deprived of effective assistance of counsel both prior to and during his trial, in violation of his constitutional rights and to his detriment. However, the State's brief in response dealt with Point II by stating that defendant's counsel had informed the State's counsel that Point II "has been abandoned and that this court will be so informed"; therefore, the State would prepare no response. No such information is contained in this Court's file. By way of Reply Brief filed by defendant's present counsel (privately retained) reply is proffered only as to Point III. The submission of this case was upon the briefs without oral argument, so that this Court could not by oral recorded interrogation of counsel ascertain the then (or present) status of Point II. This is a very unsatisfactory and difficult position in which to place this Court as to disposition of Point II in this decision, and should be scrupulously avoided by appellate counsel.

However, this Court has carefully gleaned the record to ascertain whether or not any clear ineffectiveness of counsel below is apparent. Such search has produced completely negative results. It appears from the record presently before this Court that the defendant was ably represented in the pre–trial and trial proceedings below.

■ Under such circumstances, a direct appeal is not "[a] proper vehicle for a claim of ineffective assistance of counsel". *State of Missouri v. Locke*, 587 S.W.2d 346, 350 [5–7] (Mo.App.1979) and cases cited therein under Footnotes 6–9, p. 350.

■ In view of the fact that the record now before this Court is devoid of sufficient facts upon which to base a claim of ineffective assistance of counsel, a meaningful review as to this claim cannot be accomplished and this Court refrains from ruling the issue raised by defendant's Point II.

As noted, the defendant's Point III claims reversible error based upon the refusal of the trial court to grant his *pro se* oral motion for a continuance of the trial made on the morning of the trial. The basis of this motion was that the continuance was necessary so that the defendant could make arrangements for his defense with private counsel, whom he had contacted the day before. The denial of this motion, the defendant claims, deprived him of his constitutional rights of a fair trial and of representation by counsel of his own choice.

The State argues, however, that this assignment of error was not properly preserved for appeal since it was not raised by the defendant's motion for a new trial, filed by defendant's trial counsel within the time limit set by the trial court, and was raised for the first time in the *pro se* supplemental motion for a new trial filed by the defendant three days after the expiration of the time limit set by the trial court. The defendant counters this position by asking this Court to consider the point as plain error as affecting substantial rights under Rule 27.20(c) and the denial of the motion resulted in manifest injustice and a miscarriage of justice. It is apparent that the basis of defendant's claim under his Point III does assert a wrongful denial of substantial constitutional rights under the Sixth and Fourteenth Amendments to the Constitution of the United States, and this Court has concluded to consider the question raised under Point III upon its merits. Before doing so, it must be recognized that certain basic and established principles are applicable and binding in such consideration.

■ The constitutional right to an attorney does not mean that an accused is absolutely and under all circumstances entitled to counsel of his own choice. That right is leavened and somewhat restricted to the extent that its exercise may impinge "on the public's right to effective and efficient administration of justice". *State v. Jefferies*, 504 S.W.2d 6, 7 [1, 2] (Mo.1974); *State v. Crider*, 451 S.W.2d 825, 827–828 [4] (Mo.1970); *State v. Smith*, 586 S.W.2d 399, 401 [2] (Mo.App.1979); *State v. Haddix*, 566 S.W.2d 266, 275 [12] (Mo.App.1978); *State v. Williams*, 419 S.W.2d 49, 54 [8–10] (Mo. 1967). Another limitation upon this right which is properly considered is the right of

other persons charged as defendants in other criminal cases to have access to the courts for the disposition of their cases.

 Further, the matter of the granting or denial of a request for continuance of a trial always rests within the broad discretion of the trial court, under the facts of a given trial situation. As in all matters of this nature, the appellate courts will not interfere with the trial court's exercise of its discretionary powers unless it clearly appears that such discretion has been abused. *State v. Tash*, 528 S.W.2d 775, 779 [2] (Mo.App.1975), and in making such determination on appeal every intendment in favor of the trial court's action is indulged, *State v. Smith*, 586 S.W.2d 399, 401 [1] (Mo.App.1979).

The determination of whether the trial court's denial of defendant's application for continuance constituted error can be reached only by application of the above principles to the pertinent facts which are apparent on the record. Close attention and analysis of those facts has led this Court to the conclusion that they fail to demonstrate that the trial court abused its discretion by proceeding to trial of this cause on March 14th.

 On March 27, 1978, the defendant was arraigned, he was found to be indigent, the Public Defender was appointed to defend him, he entered his appearance as counsel, and defendant entered a plea of not guilty. On the same day, the Public Defender, acting through a staff attorney, D. M. Strauss, (the attorney who represented the defendant in the trial) filed a Motion for Discovery. The case was set for trial on April 20, 1978.

Thereafter, until March 14, 1979, almost a year after the arraignment, the matter was set for trial and reset 14 times. One of these was at the request of the State because the chemist from the Highway Patrol was unavailable as a witness; one was due to the fact that the Public Defender throughout these proceedings had been elected Prosecuting Attorney of Boone County, and was therefore disqualified, and

was permitted to withdraw, and a Special Prosecutor, William Orr, was appointed to represent the State; and, several of the continuances were occasioned by the fact that the defendant was in custody of federal authorities. Attorney Strauss, who had been an Assistant Public Defender active in the defense of this case from the outset, continued that representation.

The record discloses several matters of particular significance. On the day of one of these trial settings, July 20, 1978, the defendant appeared in person and by the Public Defender and oral motion for continuance was made by the defendant and sustained by the court. This docket entry when considered in the context of the whole record clearly indicates that the continuance was granted so that the defendant could obtain private counsel. Thereafter, several trial resettings occurred because the defendant was in federal custody and because the docket conditions resulted in the case "not being reached".

At a trial setting of November 29, 1978, the case was reset for December 4, 1978, and the defendant was ordered "to appear with counsel for setting". In ruling on the application for continuance and ordering the trial to commence on March 14, 1979, the court, addressing the defendant, and for the record, stated:

"It would appear that there has been ample time particularly when, in December, you were ordered to appear with *your attorney of your own choice and none appeared * * * You were to appear December 4 with counsel. * * *"
(Emphasis supplied)

It is obvious that somewhere during this period that the defendant indicated his choice of private counsel as James Gregory of Montgomery City, Missouri. On January 16, 1979, William Orr having being appointed Special Prosecuting Attorney, filed a motion requesting that the court appoint counsel for the defendant, in which he stated:

"2. This attorney by contacting the office of the Boone County Public Defender, Attorney James Gregory of Montgom-

ery City, and Gene Stout, Sr., father of said defendant, has determined that said defendant Stout is without counsel and cannot presently be defended in this case."

On January 22, 1979, the court re–appointed the Public Defender's Office to represent the defendant, and Mr. Strauss resumed his burden and responsibilities in that capacity.

On the morning of the trial, March 14, and during the presentation of the defendant's motion for continuance, he stated to the court that he had initially contacted Mr. Gregory (when or how this was done does not appear); that he had talked to Gregory on the telephone the day before (March 13) and had made arrangements to meet with him the next day (March 15). No further details were given as to his arrangements with Gregory.

During the course of this hearing on the motion defense counsel Strauss advised the court that he had written the defendant on February 16, 1979 advising him of the trial setting on March 14, 1979; that the case would have to be tried on that date; and, asked the defendant to give him the names of possible witnesses or other preparation suggestions. He received no response to that letter. At this time, the defendant was confined in the penitentiary in Jefferson City, Missouri on another charge.

When the defendant was brought to Columbia, Missouri on the day preceding the trial, Strauss had interviewed him on three occasions on that day, without results as to names of possible witnesses. The defendant admitted receipt of the Strauss letter of February 16, and that he had not responded because he "didn't know" Strauss. It appears that Strauss for a period of almost a year had done all he could to prepare his case, and he advised the judge on March 4 that he was ready for trial. The court denied the motion for continuance and the case proceeded to trial.

After careful consideration of the record, this Court concludes that no abuse of discretion appears, and, to the contrary, the trial court showed great tolerance and forbearance to the defendant with reference to the trial settings and time to employ private counsel. Further, it is not apparent on this record how the defendant was either prejudiced by the denial of his motion for continuance, nor how he would have been benefited by a further delay of the trial.

The defendant's Point III is without merit.

The judgment is affirmed.

All concur.