STATE of Missouri, Respondent,

v.

Precious Lee BROWN, Appellant.

No. 63143.

Supreme Court of Missouri,
En Banc.

Aug. 23, 1982.

Rehearing Denied Sept. 13, 1982.

sodomy and being found to be a persistent offender was sentenced to a term of sixty-five years imprisonment on each count to be served concurrently without probation or parole. Secs. 566.030, 566.060 and 558.018, RSMo, as amended by Laws 1980, pp. 495–497. The appeal therefrom, primarily, revolves around the alleged unconstitutionality of § 491.015, commonly referred to as the "rape shield" statute. We affirm.

There is no dispute between the prosecutrix (herein referred to as the complainant) and the appellant as to whether or not the sexual activity, now reflected in the record, actually did occur. However, appellant submits that the same was consensual while the complainant asserts that it followed "forcible compulsion" upon her. Obviously, the jury believed the latter and we will hereafter recite facts thought sufficient to provide a predicate therefor.

The complainant lived and worked in Kennett, Missouri, and on October 17, 1980, had loaned her automobile to a friend, one Phillip Green, that he could look for a job and then pick her up around 4:30 p. m. Appellant, a black male, testified that early in the afternoon he and another were driven around by Green and that one stop, among others, was at a liquor store. Later they were let out with a promise by Green that he would return after going after complainant at her place of employment. Sometime thereafter he did, and appellant was introduced for the first time to the complainant under a fictitious name. At his request, they drove to a cotton gin south of Kennett where he worked that he might borrow some money. Temporary stops were made at several places prior to Green allegedly becoming ill and requesting that he be let out at the complainant's home. Appellant then asked if she could deliver him to a friend's home not far away. When no one was there, appellant asked that he be taken to a nearby service station. Finding it closed, he asked for a ride outside the city to the residence of another. At this time, insofar as of interest here, the testi-

Terry M. McVey, Welman, Seabaugh, Beaton & Williams, Kennett, for appellant.

John Ashcroft, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

MORGAN, Judge.

Appellant was convicted of three counts of forcible rape and two counts of forcible

mony of the complainant and appellant contradicted that of the other.[1]

1. Complainant testified that appellant "reached over and turned the ignition off on my car" and said, "Lady, you're fucked." Prior to and during the sexual encounters throughout the night, the following threats (without quotation marks) were related by her: that he had a gun in his pocket; that he said listen to me and you listen good, because you're going to do what I tell you to do … and I don't like to repeat myself twice either; that he held her arm while directing where she was to drive; that he said, I'll cut you; that he had been a pimp before and wanted her to be one of his ladies and he could put her on the streets; that he stuck a beer bottle in her face and said he could mess up her face until no one would ever want to look at her again, and he was constantly cussing; that he said I can kill you, can cut you up or I can beat you or you can do it willingly; that I've got lawbooks that I read up on; that I've been gathering witnesses that you're with me willingly; that he had been in the penitentiary for murder and if she took him to court, they'd laugh her out; that he had been in the courtroom seventeen times for rape and that he had beaten every one of 'em; that I've raped eighty-four women that are afraid to tell it; that she had to meet him periodically for sexual activities and one way or the other you will be there; that when I call you to come to me, you had better come; that he had her stop at a friend's house with the caution that he is just as crazy as I am; that he said anything that I want to do here I can do and if I want to kill you, he will tell me to go right ahead and do it; and that I was dumb, stupid and ignorant and he could use me any way he wanted to anytime he wanted to. She said she went to a friend's home at six a. m. and called law enforcement offices to report the offenses.

Appellant denied complainant's testimony as related and testified that all sexual activity was voluntary. When Green left the car at the cotton gin, "I asked her how she ever went out on him, had she ever wanted a black dude before. She said yes, she had one in Arkansas she go see whenever she got ready." He offered to stay at the gin if she and Green had something to do, but she said, "No, you don't have to." He said they drove around to get some marijuana and Green and complainant smoked it at her house but appellant did not. Green told him: "You and her head on out" and after appellant refused they all left together. Later they brought Green back to complainant's house and the two "went riding around … drinking beer and whiskey." "We talked about me and her having sex … and I told her I'd give her $10." She told appellant that Green didn't have a job and that she supported him. After further conversation, they each had oral sex and intercourse several times throughout the night. "I told her I'd pay her

rent if I could see her once a month. She agreed." Later testimony by appellant indicated no agreement was reached as to "money" and "number of times." In summary, appellant testified consistently that all sexual activity was consensual and that he did not "force" complainant to have sex with him at any time.

2. Sec. 491.015 reads as follows:

1. In prosecutions for the crimes of rape, attempt to commit rape, or conspiracy to commit rape, opinion and reputation evidence of the complaining witness' prior sexual conduct is inadmissible; evidence of specific instances of the complaining witness' prior sexual conduct or the absence of such instances or conduct is inadmissible, except where such specific instances are:

(1) Evidence of the sexual conduct of the complaining witness with the defendant to prove consent and the evidence is reasonably contemporaneous with the date of the alleged crime; or

(2) Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease;

(3) Evidence of immediate surrounding circumstances of the alleged crime; or

(4) Evidence relating to the previous chastity of the complaining witness in cases, where, by statute, previously chaste character is required to be proved by the prosecution.

2. Evidence of the sexual conduct of the complaining witness offered under this section is admissible to the extent that the court finds the evidence relevant to a material fact or issue.

3. If the defendant proposes to offer evidence of the sexual conduct of the complaining witness under this section, he shall file with the court a written motion accompanied by an offer of proof or make an offer of proof on the record outside the hearing of the jury. The court shall hold an in camera hearing to determine the sufficiency of the offer of proof and may at that hearing hear evidence if the court deems it necessary to determine the sufficiency of the offer of proof. If the court finds any of the evidence offered admissible under this section the court shall make an order stating the scope of the evidence which may be introduced. Objections to any decision of the court under this section may be made by either the prosecution or the defendant in the manner provided by law. The in camera hearing shall be recorded and the court shall set forth its reasons for its ruling. The record of the in camera hearing shall be sealed for delivery to the parties and to the appellate court in the event of an appeal or other post trial proceeding.

As noted, appellant's primary issue references the constitutionality of § 491.015;[2]

which, with certain exceptions, proscribes admission of evidence of prior sexual conduct of the complaining witness. He alleges that his confrontational rights as guaranteed by the sixth amendment to the U. S. Constitution were violated in that: (1) he was denied an opportunity to present evidence of the complainant's reputation in the community for engaging in indiscriminate consensual sexual activity as relevant to the issue of "consent" and (2) he was denied an opportunity to present evidence as to specific sexual relations between the complaining witness and a third party which would have tended to show a motive for her to falsify her testimony and charge of rape.

Prior to enactment of the statute, evidence of a complainant's *general* reputation for morality and chastity was held admissible as bearing on the issue of consent but not specific acts of alleged misconduct. *State v. Yowell*, 513 S.W.2d 397 (Mo. banc 1974); *State v. Kain*, 330 S.W.2d 842 (Mo. 1960). The reasoning behind this proposition was that a woman of previous unchaste character was more likely to consent to an act of sexual intercourse than a woman strictly virtuous. Such evidence historically was permissible not only to infer *consent* but also to attack *credibility*.[3] We, as have others, declare that chastity is no longer a pertinent character trait upon which credibility must turn. Further, as found in *Milenkovic v. State of Wisconsin*, 86 Wis.2d 272, 272 N.W.2d 320 (1979), we find the idea that a woman's prior consent is *per se* relevant to the question of a later consent to be a "tired, insensitive and archaic platitude of yesteryear." 272 N.W.2d at 324. Indeed, the legislative department of our state recognized the same fallacy when it limited the admissibility of prior sexual conduct to those *specific* exceptions found in § 491.-

015.1 and the more generalized exception of § 491.015.2.

The thinking behind the enactment of said section undoubtedly was threefold. First, it redressed the faulty premise upon which evidence of prior sexual conduct traditionally had been admitted. Second, it is apparent that in most instances a rape victim's past conduct has no reasonable bearing upon the issue of consent or credibility. Introduction of such evidence serves only to humiliate and embarrass the witness in a public "fishing expedition" which puts the complainant on trial instead of the appellant. Section 491.015, thus, reflects a major public policy decision that "victims" not be subjected to unwarranted psychological and emotional abuse. *People v. McKenna*, 196 Colo. 367, 585 P.2d 275 (Colo.1978). Lastly, the statute demonstrates a reasonable and proper attempt to aid effective law enforcement by encouraging victims of rape to report and prosecute such crimes without a threat to expose intimate details of past sexual activity, if any, to the public. The significance of the latter factor is apparent when it is accepted that the incidence of rape is ever increasing and there remains a reluctance to report the offenses.[4]

■ Nevertheless, when read objectively it is clear that the challenged statute creates only a "presumption" that evidence of a victim's prior sexual conduct is irrelevant. Enumerated exceptions to the general presumption, as listed in § 491.015.1(1)–(5), retain the principle that *in limited circumstances* prior sexual conduct may be relevant. Further, the "catch-all" in subsection 2 of § 491.015 allows introduction of any evidence "the court finds . . . relevant to a material fact or issue." Consistent therewith is the fact that no one suggests that

---

3. Yet, ironically, such was not the case with males. "[S]uch evidence is inadmissible in any case for the purpose of impeaching the character of a male witness . . . . It is a matter of common knowledge that the bad character of a man for chastity does not ever in the remotest degree affect his character for truth, when based upon that alone, while it does that of a woman." *State v. Sibley*, 131 Mo. 519, 531, 33 S.W. 167, 171 (1895).

4. It has been estimated that the actual number of rapes may be as much as twenty times greater than the number reported, a larger disparity than for any other crime. *See* Tanford and Bocchino, *Rape Victim Shield Laws And The Sixth Amendment*, 128 U.Pa.L.R. 544, fn. 13, p. 547 (1980).

due process requires the admission of irrelevant evidence. Reference the exercise of that duty by the trial court, some discretion must be allowed to forbid the admissibility of evidence which is found to have its *probative* value, if any, outweighed by its potential for prejudicial impact.[5]

Thus, an accused is not strictly prohibited from tendering the prior sexual conduct of a prosecuting witness into evidence. In § 491.015.3, may be found the procedural steps to have available evidence heard and evaluated outside the hearing of the jury. Should the trial court find the proffered evidence to be encompassed by an exception to the presumption of irrelevance, or relevant with the probative value outweighing the prejudicial impact thereof, it is to be admitted. Consideration necessarily must be given to the known fact that such evidence tends to detract the jury from the issue it is called upon to resolve.

■ In this light, the challenged statute suffers no constitutional infirmity and is not violative of any rights of confrontation;[6] and is, in our opinion, facially constitutional.[7] Of immediate interest, on the same point, is the holding in *United States v. Kasto*, 584 F.2d 268 (8th Cir. 1978), cited with other cases in fn. 7, wherein the court, pp. 271–72, said: "The fact that a rape victim has engaged in consensual sexual relations with the defendant in the past under similar conditions may have some logical relevance to the question of consent to the act charged, and evidence of prior sexual activity with the defendant under dissimilar circumstances may also have some logical relevance, but '[w]hen both identity of persons and similarity of circumstances are removed * * * probative value all but disappears.' Ordover, *Admissibility of Patterns of Similar Sexual Conduct: The Unlamented Death of Character for Chastity*, 63 Cornell L.Rev. 90, 106 (1977) * * * We, therefore, conclude that absent circumstances which enhance its probative value [footnote omitted], evidence of a rape victim's unchastity, whether in the form of testimony concerning her general reputation or direct or cross-examination testimony concerning specific acts with persons other than the defendant, is ordinarily insufficiently probative either of her general credibility as a witness [footnote omitted] or of her consent to intercourse with the defendant on the particular occasion charged to outweigh its highly prejudicial

---

5. *See* F.R.E. 403 (1981 Edition).

6. In *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the U. S. Supreme Court held unconstitutional a *total prohibition* of introduction of *concededly relevant* evidence of a witness' past juvenile record. This prohibition was solely to protect the privacy of the juvenile. While jurisdictions are not in agreement as to *Davis'* application to rape shield statutes, we note that our statute is not a total prohibition of evidence of prior sexual conduct, the evidence sought to be admitted is only of questionable relevance (and of such limited probative value that its submission to the jury would be most likely unfairly prejudicial), and the interests served by its exclusion are not only the privacy of the witness, but also include the public policies of sparing rape victims unwarranted psychological and emotional abuse, and in encouraging the reporting and prosecution of these crimes.

7. The holding that our rape shield statute is facially constitutional is in line with the holdings of a majority of states that have examined the issue. As representative thereof *see: State v. Fortney*, 301 N.C. 31, 269 S.E.2d 110 (1980) with other cases in fn. 7, (prior sexual history not *per se* relevant; defendant has no right to introduce evidence that is irrelevant or of such weak probative force that it is outweighed by the likelihood of prejudice); *United States v. Kasto*, 584 F.2d 268 (8th Cir. 1978) (absent circumstances to enhance probative value, evidence of victim's unchastity is not sufficiently probative of consent or credibility; no constitutional violation to exclude irrelevant and inadmissible evidence); *Milenkovic v. State*, 86 Wis.2d 272, 272 N.W.2d 320 (1978) (evidence of prior sexual conduct not logically relevant; even if relevant, such evidence is unfairly prejudicial, hence no violation of fundamental rights in its exclusion); *Smith v. Commonwealth*, 566 S.W.2d 181 (Ky.App. 1978) (rape shield is a constitutional and valid exercise by legislature to prevent rape victim from becoming a defendant at trial); *People v. Blackburn*, 56 Cal.App.3rd 685, 128 Cal.Rptr. 864 (1976) (right to fair trial does not require all relevant evidence be received into evidence; evidence of past sexual conduct is of limited probative value at best; hence, its bar does not deprive defendant of fair trial). *See:* Annot. 1 A.L.R. 4 283 (1980).

effect." Thereafter, the court found a claim to the contrary without merit, and declared that: "The Sixth Amendment right to confrontation and the Fifth Amendment right to due process of law require only that the accused be permitted to introduce all relevant and admissible evidence." A comparable rape shield law was upheld in *People v. Cornes*, 80 Ill.App.3d 166, 35 Ill.Dec. 818, 825, 399 N.E.2d 1346, 1353 (1980).

■ Next, we look to the manner in which the statute was applied in the instant case. Appellant asked to introduce evidence of a prior sexual relationship between complainant and the alleged boy friend, Phillip Green, within a few weeks of the commission of the crime charged. The specific request was denied by reason of the dictates of the statute. However, evidence was admitted that complainant was twenty-eight years of age; that she had been married and divorced at least once; that she had known Green since they were kids; that she had not seen him for several years until a few weeks before the offense and that they had "dated" during the recent period. Although evidence of specific sexual activity was excluded, certainly no effort was made to present the complainant as a stranger to past sexual experiences. With at least some appreciation of this obvious fact, appellant by argument now developes somewhat of a syllogism, *i.e.*, that complainant consented to the activities, forming the basis of the charge; that she did not want to reveal this fact to the would-be boy friend; and, that a falsified rape charge was required to save face. The assertion is made that evidence of a sexual relationship would have shown the "strength" of that friendship and buttressed the argument as made. For some continuity of thought, we note to the contrary that Green could not be found at time of trial and complainant's testimony that: "I feel that he [Green] set me up for this." Thus, appellant was not denied an opportunity to demonstrate some possible underlying motive for the charge made in contrast to the ruling for complete denial of evidence, to protect the victim's privacy interest, rejected in *Davis v. Alaska, supra.*

We hold that the trial court did not abuse its discretion in failing to permit the admission of the tendered evidence; and we further find § 491.015 to be constitutional as applied to the facts *sub judice*. *State v. Fortney*, 301 N.C. 31, 269 S.E.2d 110, 117 (N.C.1980).

We now address appellant's numerous additional allegations.

■ He asserts that a mistrial should have been declared when a police officer, Chief Elliott, testified that appellant, when arrested, threw up his hands and said, "Oh, no, not again." This testimony allegedly had not been disclosed specifically to appellant prior to trial pursuant to a discovery request. In response, the prosecutor explained that: "I've given [defense counsel] copies of everything I've had in this case. I gave it to him long ago. As I obtained recent items, I would give him new items when I had them. He's known about Chief Elliott as a witness and has had ample opportunity to examine [him] as a witness. I don't know in every case what a witness is going to say ... and there's no existing memorandum of Chief Elliott that he [defense counsel] doesn't have." Even if the explanation as given were to be rejected, the question would remain as to whether any prejudice or fundamental unfairness resulted, *State v. Smothers*, 605 S.W.2d 128 (Mo. banc 1980), and it is clear that it did not. Further, appellant has not suggested how this testimony affected the result of his trial. We observe, nevertheless, the implication that appellant was aware that he had done something illegal; but, in light of other testimony [8] which was either disclosed or not objected to, this evidence was merely

---

8. Unobjected to testimony demonstrated also that appellant stated: "She hollered rape, didn't she?" and, "I banged the bitch, but I paid her, I paid her ten dollars," after being arrested and informed of his rights. Additionally, it is of interest to note the state's response to the disclosure request said: "If you find it to be in any way deficient, please immediately notify me."

cumulative of appellant's knowledge of the conduct charged. Additionally, we observe appellant only requested the drastic remedy of a mistrial which is reserved for extra-ordinary circumstances; and, being mindful that "the question of remedies lies within the sound discretion of the trial court," we find no error. *State v. Royal*, 610 S.W.2d 946, 951 (Mo. banc 1981).

■ Appellant's argument that the state was late in providing a copy of a report of a medical examination of complainant is without merit. First, the prosecutor said he was not aware that expert testimony was contemplated nor the significance, if any, of the examination or report. In any event, if an issue did exist it was mooted by appellant being granted a continuance of ten days and thereafter reporting to the court that: "Our concerns were unfounded."

■ It is contended that the trial court's finding that he was a persistent sexual offender under § 558.018.2 (Laws 1980, p. 495, § 1), and the enhanced sentence pronounced in accordance therewith, were erroneous because his previous felony conviction for statutory rape in 1978 would not be an enumerated felony within the present persistent sexual offender statute as now defined in § 558.018.1. More simply put, it is conceded that appellant was tried and convicted on November 14, 1978, of statutory rape by carnally knowing a fifteen year old female; that effective January 1, 1979, relevant statutory provisions were amended to reduce said age to "less than fourteen" as shown by § 566.030.1(2) (Laws 1977, p. 662, § 1, eff. Jan. 1, 1979), (now § 566.030.3, Laws 1980, p. 497, § 1). Contrary to the argument as made, the prior trial and conviction, having been had prior to the amendment noted, retained its status as a "felony" rape conviction and sentence both by statutory enactment and judicial construction. Section 556.031 provides, in part, that: "Such an offense must be construed and punished according to the provisions of law existing at the time of the commission thereof in the same manner as if this code had not been enacted . . . ." Holdings, consistent therewith, may be found in *State v. Harris*, 612 S.W.2d 898, 900 (Mo.App.1981), and *State ex rel. Peach v. Bloom*, 576 S.W.2d 744, 747 (Mo. banc 1979).

■ Appellant further attacks his sentence as being cruel and unusual, in that the sixty-five year sentence without probation or parole is greater than that for a capital murder. The weakness of the argument is that one convicted of capital murder could receive death, § 565.008; or that one convicted of five counts of capital murder (appellant being convicted of five separate counts of forcible sodomy and rape) could receive two hundred fifty years without possibility of probation or parole. Section 558.018.3 provides a minimum sentence of thirty years without probation or parole for persistent sexual offenders yet sets no corresponding maximum. Thus, the imposed sentence does not violate the statutory provision. Whether or not a statutory maximum limit is desirable, the legislative department of this state has not established one. Constitutional provisions against cruel and unusual punishment are aimed primarily at the "kind" of punishment imposed and not its duration. In *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1333, 63 L.Ed.2d 382 (1980), the petitioner received a *life sentence* for a conviction of a third felony (1) fraudulent use of a credit card to obtain goods or services in the amount of $80; (2) passing a forged instrument in the amount of $2,836; and (3) obtaining $120.75 by false pretenses and the court said, at 272, that: "Because a sentence of death differs in kind from any sentence of imprisonment, no matter how long, our decisions applying the prohibition of cruel and unusual punishments to capital cases are of limited assistance in deciding the constitutionality of the punishment meted out to Rummel." Therein, the court also declared that:

> The purpose of recidivist statutes such as that involved here is not to simplify the task of prosecutors, judges, or juries. Its primary goals are to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of

society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. Like the line dividing theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction.

*Id.* at 284, 100 S.Ct. at 1144.

It is not for this court to specify punishments for the offenses involved.

■ Appellant alleges the trial court erred in sustaining the state's oral motion for a two day continuance in that it denied appellant's right to a speedy trial. The point is totally without merit but we recognize it by pointing out that the two days were tacked on to appellant's continuance heretofore mentioned. Furthermore, the court has broad discretion in granting continuances. *State v. Stout*, 604 S.W.2d 710 (Mo.App.1980); *State v. Oliver*, 572 S.W.2d 440 (Mo.1978). Trial was had within the time directives of § 545.780.2.

■ Argument is made that the state was allowed improperly to introduce a portion of a deposition taken by defendant. The record reflects that the parties agreed it could be admitted; and, if the challenge is to the "order of proof," the trial court has great discretion which was not abused. *Kansas City v. Ramsey*, 525 S.W.2d 392 (Mo.App.1975); *State v. Stogsdill*, 324 Mo. 105, 23 S.W.2d 22 (1929); *State v. Smith*, 631 S.W.2d 353 (Mo.App.1982).

■ Over objection, a statement of appellant to an arresting officer was admitted. After the officer had told him that: "I know exactly what your doing, what you're doing in this rape, you're coercing these people, your threatening them," he replied: "You're right, I know that you know what I'm doing." The admission thereof was within the court's discretion as

a declaration showing a consciousness of guilt and was admissible. *State v. Brooks*, 551 S.W.2d 634 (Mo.App.1977).

■ During cross-examination of appellant, he was asked about the prior rape conviction and if it involved the same liquor store mentioned in the instant case. The basic inquiry was proper as an attack on appellant's credibility; however, the reference to a "specific" thereof was improper, *State v. Scott*, 459 S.W.2d 321 (Mo.1970), but not so prejudicial as to require a declaration of "mistrial" which was the only relief requested.

■ After a defense witness had referred several times to a girlfriend of appellant, the prosecutor asked that she be identified in the courtroom. The record does not place any ill-motive on the state merely because it would appear that she was white, as the evidence throughout indicates appellant was accepted as an associate and friend of other white persons in the community—both male and female. Likewise, it does not seem to have been an effort toward racial prejudice when in closing argument the prosecutor said: "Well, ladies and gentlemen, you're the only ones that can do anything. You're the only ones that can do anything in this case. The Judge can judge, the Reporter can report, I can prosecute, the Police Officers can police. We can all do it 'til we're *black* in the face. Unless you do your job . . . ." (Emphasis added.) Obviously, the argument as made was a legitimate effort to emphasize to the jury the gravity of their assigned task, and it would take an extremely strained reading to find therein some racial innuendo designed to affect the jury's deliberations.

■ Appellant submits that the verdict directing instructions, given in each of the five counts, were erroneous and thus prejudicial. Admittedly, the instructions as to "rape" followed MAI–CR2d 20.02.1 and those reference "sodomy" followed MAI–CR2d 20.08.1. One example should suffice. Instruction No. 5, in paragraph *Third*, required the jury to find that the "sexual intercourse" finding mandated by para-

graph *Second* was "... without her consent by the use of forcible compulsion" and, if so found, a verdict of guilty of "rape" should be returned. It is contended that the last clause of said instruction should dictate an ultimate finding of "forcible rape" under § 566.030.2 (as amended by Laws 1980). To the contrary, it is apparent that the "elements" which must be found by the jury are those specified in paragraphs *Second* and *Third* plus that in paragraph *First, i.e.,* that the accused "was not married" to the alleged victim. If affirmative findings are made in each of said instances, it is obvious the last clause is not an "element" or "issue" to be found but merely a directive as to what necessarily must follow, and a finding of "rape" is not prejudicial. MAI–CR 20.02.2, involving conventional statutory rape, is consistent therewith and after a finding of elements (including the victim being "less than fourteen years old") dictates a finding of "rape" only. The amendment of the statute, last made, left the crime of rape but was more specific as to the punishments relative to the manner by which committed.

■ Lastly, it is alleged that the trial court erred in limiting closing argument of counsel to twenty minutes. In this regard, broad discretion is given to a trial court, *State v. Townzell,* 286 S.W.2d 785 (Mo. 1956), and the record presented does not reflect an abuse thereof. The sole issue was whether or not there was "consent" to the admitted sexual activity and we cannot with any confidence declare that the time allotted was inadequate.

Finding no reversible error, the judgment is affirmed.

DONNELLY, C. J., and RENDLEN, HIGGINS and BARDGETT, JJ., concur.

WELLIVER, J., dissents in separate dissenting opinion filed.

SEILER, J., dissents and concurs in separate dissenting opinion of WELLIVER, J.

WELLIVER, Judge, dissenting.

I respectfully dissent.

The application of the rape shield statute, § 491.015, RSMo 1978, in this case deprives appellant of his sixth amendment right to confront adverse witnesses.[1] The principal opinion dismisses the controlling principle announced in *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), and ignores those cases that have applied it in situations similar to the one presented here. *Davis* and its progeny require that this case be reversed and remanded for a new trial.

In *Davis* the United States Supreme Court held that an Alaska statute protecting the anonymity of juvenile offenders violated the confrontation clause. Davis had been convicted of burglary and grand larceny of a safe containing well over one thousand dollars. The safe was found near the home of Green, the prosecution's chief witness, who testified that he had seen and spoken with two men, including Davis, near the site where the safe later was discovered. At trial Davis proposed to demonstrate Green's bias by cross-examining Green about his adjudication as a juvenile delinquent because of a burglary and about his probationary status at the time of the events about which he was to testify. The trial court, on motion of the prosecution, issued a protective order based upon the statute and refused to allow the proposed cross-examination.

The Supreme Court reversed the conviction and remanded. A criminal defendant, the Court said, may attack a witness' credibility

> by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as

---

1. The sixth amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S.Const. amend. VI. The guarantee applies against the states through the fourteenth amendment. *Pointer v. Texas,* 380 U.S. 400, 94 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

discrediting the witness and affecting the weight of his testimony." ... We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.

*Id.* at 316–17, 94 S.Ct. at 1110–1111. The Court continued by stating that

[w]e cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning [that Green was biased because of his own interest in avoiding prosecution] had counsel been permitted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on Green's testimony which provided "a crucial link in the proof ... of petitioner's act." ... The accuracy and truthfulness of Green's testimony were key elements in the State's case against petitioner. The claim of bias which the defense sought to develop was admissible to afford a basis for an inference of undue pressure because of Green's vulnerable status as a probationer, ... as well as of Green's possible concern that he might be a suspect in the investigation.

*Id.* at 317–18, 94 S.Ct. at 1111. The Court concluded that "[t]he State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." *Id.* at 320, 94 S.Ct. at 1112.

The impact of *Davis* on cases involving the application of rape shield statutes is apparent. Regardless of the facial constitutionality of such statutes, it is obvious that when, as here, the issue is timely raised,[2] application of such statutes to prevent admission of evidence of a complainant's previous sexual conduct works an unconstitutional deprivation of the right of confrontation when the question involves the possible biases, prejudices, or ulterior motives of the complainant. Other courts have reached this conclusion when faced with the same issue. *Marion v. State*, 267 Ark. 345, ——, 590 S.W.2d 288, 290 (1979); *State v. DeLawder*, 28 Md.App. 212, 226–28, 344 A.2d 446, 454–55 (1975); *Commonwealth v. Joyce*, 382 Mass. 222, ——, 1981 Mass. Adv.Sh. 39, ——, 415 N.E.2d 181, 186–87; *State v. Jalo*, 27 Or.App. 845, 850, 557 P.2d 1359, 1362 (1976). *See State v. Decuir*, 364 So.2d 946, 947, 949 (La.1978) (Dennis, J., concurring); *State v. Howard*, 426 A.2d 457, 462 (N.H.1981).

The principal opinion dismisses *Davis* with little more than a footnote. The failure to discuss *Davis* at length demonstrates the fallacy of the attempt to distinguish it. The evidence of the complainant's relationship with Phillip Green is, under *Davis*, an insufficient substitute for a comprehensive cross-examination. Evidence of any sexual relationship that may have existed between the complainant and her boyfriend doubtless would strengthen appellant's defense. For the cross-examination of the complainant to be effective, "defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis*, 415 U.S. at 318, 94 S.Ct. at 1111. The principal opinion makes a hollow distinction when it asserts that § 491.015, RSMo 1978, is not a total prohibition of evidence of prior sexual conduct. The fact remains that the statute would in this case prevent admission of evidence that appellant has a constitutional right to introduce.

I do not suggest that in every case the asserted interest of the individual defend-

---

**2.** A defendant may not complain on appeal that the trial court erred in failing to admit proffered testimony whenever he fails at trial to present a proper theory of relevance. *See United States v. Nez*, 661 F.2d 1203, 1206 (10th Cir. 1981). An appellate court will not over- turn a conviction on such an allegation of error whenever "it appears that the [asserted theory of relevance] was developed on appeal rather than as an integral part of [a defendant's] trial strategy." *Logan v. Marshall*, 680 F.2d 1121, 1123 (6th Cir. 1982).

ant will outweigh the interests of the state. There may well be situations in which a defendant might concoct a theory of bias, prejudice, or ulterior motive so untenable that it is obvious that any testimony sought to be elicited would be aimed merely at embarrassing or harassing the witness. In such situations the trial court, in the exercise of its "broad discretion ... to preclude repetitive and unduly harassing interrogation," *Davis*, 415 U.S. at 316, 94 S.Ct. at 1110, would be justified in excluding such evidence. *See United States v. Nez*, 661 F.2d 1203, 1206 (10th Cir. 1981). That, however, is not the case before us. It is clear that the testimony appellant sought to introduce was reasonably related to proof of bias, prejudice, or ulterior motive. Here "The right of confrontation is paramount" to the asserted state interest. *Davis*, 415 U.S. at 319, 94 S.Ct. at 1112.

The judgment should be reversed, and the case should be remanded for further proceedings consistent with the views expressed herein.