STATE of Missouri,
Plaintiff-Respondent,

v.

Lawrence M. SCHMIDT,
Defendant-Appellant.

No. 50857.

Missouri Court of Appeals,
Eastern District,
Division Ten.

June 30, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 8, 1986.

Application to Transfer Denied
Sept. 16, 1986.

Henry B. Robertson, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke and John Munson Morris, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

STEPHAN, Presiding Judge.

Defendant was convicted of two counts of assault first degree, § 565.050 RSMo Cum.Supp.1984, and two counts of assault second degree, § 565.060 RSMo Cum.Supp. 1984. The trial court found defendant to be a persistent offender under § 558.016 RSMo Cum.Supp.1984, and sentenced de-

fendant to five years on each of the two counts of assault second degree, and ten years on each of the two counts of assault first degree, with one of the ten year sentences to be served consecutive to the other sentences, for a total of twenty years imprisonment in the Missouri Department of Corrections. § 557.036 RSMo Cum.Supp. 1984. Defendant appeals; we affirm.

On March 3, 1985, defendant arrived at the residence of Patricia Johnston at 1:30 a.m. and proceeded to pound on the door for admittance and ask for money. Defendant refused to go away and broke the glass on the outer door, and Ms. Johnston called the police. Officer Kevin Burgdorf arrived at the scene in a patrol car and saw defendant jump from a hiding place in some bushes and run to a Pontiac automobile. Defendant entered the automobile and drove off at a high rate of speed.

Officer Thomas Neske, who was conducting a building check along with Officer Greg Zotta at Compton and Shenadoah, was standing at the mouth of an alley when the car driven by defendant came speeding down the alley. After the car entered the street, it turned directly toward Neske, who dove out of the way. Officer Zotta pursued defendant in his patrol car, and caught up with him when defendant tried to turn the car around in a dead-end street. Defendant, still in the stopped car, placed his hands on his head, and Zotta, gun drawn, exited his vehicle and started walking toward defendant. Defendant threw his car into drive and started towards Zotta, who was able to take cover behind the patrol car. Defendant then rammed a parked car, backed up, and again aimed the car at Zotta, coming within three feet of the officer. Defendant then exited the dead-end street and turned south onto another street.

At that moment, Officer James Ryan was driving a police van on the street northwardly toward the intersection where defendant had turned. Defendant aimed the Pontiac at the van, forcing Officer Ryan to switch lanes three times to avoid a head-on collision. The van eventually ended up on the sidewalk. Officer Joseph Kriska, whose unmarked car was stopped in the north lane of the street, observed the incident with the police van, and exited his car. The Pontiac began to slow, and Kriska approached with his gun drawn and at his side. The Pontiac suddenly accelerated again and drove directly towards Kriska. Kriska jumped back and fired two shots. The Pontiac eventually stopped with two flat tires. Defendant fled but was subsequently apprehended.

The jury found defendant guilty of assault in the first degree with respect to his acts directed toward Officers Zotta and Kriska and assault, second degree, with respect to Officers Neske and Ryan.

At a pre-trial hearing in chambers on defendant's motion in limine, the trial court overruled defendant's objection to the State's use of testimony by Ruth Flier, the owner of the Pontiac, that the Pontiac had been stolen on February 27, 1985 from a parking lot where she had left it with the engine running while she made a quick visit to a store. The State had argued that this testimony provided the motive for defendant's assault on the officers. At trial, defense counsel promptly objected, out of the hearing of the jury, to any testimony by Ms. Flier which attempted to specifically connect defendant with the theft of the Pontiac, on the bases that the defendant was not on trial for the stealing of the car, and that the testimony was irrelevant because the prosecutor had already elicited from Ms. Flier the information that her car had been stolen. The prosecuting attorney stated he wanted to ask the witness, "Did you ever give that individual [the defendant] permission to drive or operate your vehicle? Did you ever give anyone else permission to drive or take your vehicle from there?" The judge overruled defendant's objection.

The prosecuting attorney then proceeded to ask Ms. Flier, "Did you ever give him [defendant] permission to take your vehicle off that parking lot in St. Louis County that day?" and "Did you ever give him [defendant] permission to drive that vehicle

at all?" The witness answered both questions in the negative. The trial judge, *sua sponte*, asked the attorneys to approach the bench, then stated that although he had consented to a question regarding whether defendant had been given permission to drive the Pontiac, he had not authorized a question inquiring as to whether defendant had been given permission to *take* the car off the parking lot. At this point defense counsel requested a mistrial, which was denied. The court subsequently admonished the jury to disregard the question of whether defendant had permission to take the car off the parking lot, letting stand the question and answer as to whether defendant ever had permission to drive the vehicle.

On appeal defendant contends that the trial court erred in overruling his motion in limine and motion for mistrial regarding the testimony of Ruth Flier, as this was inadmissible evidence of another crime, motive for the assaults had already been proven by other evidence, and the State failed to sufficiently connect defendant with the car theft. Defendant contends, in effect, that evidence concerning the fact that the car had been stolen was unnecessary to establish motive because, by his own admission, he had broken the window, police had been called, he was on probation as a result of another conviction and he wanted no "involvement with the police at all."

█ Evidence of an unrelated crime for which a defendant is not charged is generally inadmissible unless the unrelated crime has a legitimate tendency to establish defendant's guilt of the crime charged. *State v. Shaw*, 636 S.W.2d 667, 671–672 (Mo. banc 1982). Evidence of an unrelated crime is admissible to prove the crime charged if it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other, or the identity of the person charged with the commission of the crime on trial. *Id.* at 672.

█ In the present case, the jury could infer that defendant knew or suspected the car he was driving had been stolen, thus giving him a very strong motive to avoid capture by the police while he was driving the stolen car, even at the risk of assaulting four police officers. The jury might be more willing to believe this theory of defendant's motive, than that he risked four assault charges because he broke the window of a former friend's apartment. The State is required to sustain its burden of convincing the jury of defendant's guilt beyond a reasonable doubt, and should not be unduly restricted as to the manner of meeting its burden. Clearly, the State should not be limited in the performance of its prosecutorial function by the defendant's agreement to the admission of less compelling evidence than that properly available to the State. *Cf. State v. Clemons*, 643 S.W.2d 803, 804–805 (Mo. banc 1983).

█ "Relevance is the touchstone of due process, and beyond that the decision whether potentially prejudicial or inflammatory evidence should be admitted lies within the sound discretion of the trial court ... which is in a better position to balance the probative value and danger of the evidence." *State v. Shaw*, 636 S.W.2d 667, 672 (Mo. banc 1982). *See also State v. Trimble*, 638 S.W.2d 726, 732 (Mo. banc 1982). If the jury believed the State's theory of defendant's motive, they would have to at least believe defendant suspected the car he was driving was stolen, therefore the possibility that the jury might believe defendant actually stole the car was unlikely to unduly prejudice the jury. We defer to the trial court's assessment that the admonition to the jury was sufficient to cure any prejudice. Finally we note that a mistrial is a drastic remedy and should not be used except where extraordinary circumstances are present. *State v. Brown*, 636 S.W.2d 929, 936 (Mo. banc 1982), *cert. denied*, 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 448 (1983). No such extraordinary

circumstances are apparent in the case before us.

Judgment affirmed.

SIMON and KELLY, JJ., concur.